271 F.2d 745
 WILLISTON OIL & GAS COMPANY, a corporation; and Petroleum
Operators Corporation, a corporation, Appellants,
v.
PHOENIX INSURANCE COMPANY, a corporation; and Manufacturers
Casualty Insurance Company, a corporation, Appellees.
 No. 6127.
 United States Court of Appeals Tenth Circuit.
 Nov. 2, 1959.
 
 Peter H. Holme, Jr., Denver, Colo. (Richard P. Matsch, and Holme, Roberts, More & Owen, Denver, Colo., were with him on the brief), for appellants.
 Edward E. Murane, Casper, Wyo. (Murane, Bostwick & McDaniel, Casper, Wyo., were with him on the brief), for appellees.
 Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The issue for determination is the liability of appellants Williston Oil & Gas Company and Petroleum Operators Corporation[1] for damage by fire to a truck owned by Daniel Marken, doing business as Marken Drilling Company,[2] and covered by insurance written by the appellees. In a Wyoming state court suit Marken recovered judgment against the insurance companies in the amount of $6,710. They, as subrogees of Marken, then brought this action.
 
 
 2
 Williston and Petroleum were co-owners of oil producing properties in Park County, Wyoming. Two wells thereon required reconditioning. Williston contracted with Marken to do such work on well No. 3 and with Big Horn Well Servicing Company[3] as to well No. 4. Each well was connected by a pipeline with the same battery of storage tanks. Well No. 3, well No. 4, and the storage tanks were each located on different forty-acre tracts.
 
 
 3
 In the early morning of December 5, 1953, at the request of Claygore, an employee of Petroleum, a truck owned by Marken was driven by McCrady, an employee of Marken, from the site of well No. 3 to the location of well No. 4 and there loaded with a pump. McCrady then drove the truck carrying the pump to the tank battery and left it with the pump loaded thereon at a point where, on December 7, it was severely damaged by fire of unexplained origin so far as the record discloses. At the time of the fire no Marken workmen were at the scene. The identity of those who were present is not shown by the record.
 
 
 4
 The insurance companies assert the right to recover from Williston and Petroleum under a written contract between Marken and Williston. By this contract Marken undertook 'certain work over operations' on well No. 3. The fortyacre tract on which well No. 3 was located was specifically described. Marken agreed to furnish equipment, which, as listed, did not include a truck. Paragraph 3 l of the contract read thus:
 
 
 5
 'Owner (Williston) shall be responsible for loss of or damage to the hole and Contractor's (Marken's) equipment while contractor is being paid on a diem basis.'
 
 
 6
 Willston and Petroleum object to the trial court's finding of fact that they 'were engaged in a joint operation in cleaning out and making repairs to' the wells in question. The trial court said that such finding was based upon admissions in the answer of Williston and Petroleum. The insurance companies concede that no such admissions were made but say that the finding is sustained by the evidence.
 
 
 7
 While admittedly Williston and Petroleum were co-owners, a co-owner-ship is insufficient to establish a mining partnership or a joint venture. There must be cooperation in the project.[4] To establish such cooperation, reliance is placed on the activities of Claygore, the Petroleum employee, who requested McCrady to use the Marken truck to move the pump from the No. 4 well to the tank battery.
 
 
 8
 Lundberg, the chief petroleum engineer of Williston and the individual in responsible control of operations at the wells for that company, testified that Claygore was an officer of Petroleum but the nature of that office, the extent of authority, and the type of duties are not disclosed by the evidence. Claygore did not testify. The trial court made no findings as to the position of Claygore. Marken was not acquainted with Claygore. McCrady said that at the beginning of the operations at well No. 3 Claygore gave instructions as to where the rig and other equipment were to be placed. Lundberg testified that 'Mr. Claygore had no authority over the operations of either the drilling equipment or the work over rig.' While Lundberg approved a Big Horn invoice containing items for December 6 and 7 relative to the removal of the mud from the No. 4 well, this does not establish any authority in Claygore to act for Williston. The removal of the mud from well No. 4 was a part of the Big Horn job.
 
 
 9
 The evidence is insufficient to sustain a finding that Claygore had any authority to speak or act for Williston or to join Petroleum either as a participant in the reconditioning operations or as a party to the Marken and Big Horn contracts. There is no evidence that Petroleum was paying any part of the expense under either the Marken or Big Horn contract. The benefit which Petroleum might have received from the work is not established. Williston made the two contracts and Petroleum was a party to neither. In this state of the record there is no substantial evidence to sustain the finding of joint operations. It is clearly erroneous and must be rejected. In the absence of a joint operation there is no basis for any judgment against Petroleum.
 
 
 10
 The trial court concluded that the truck was 'equipment' within the meaning of the Williston-Marken contract. The parties adduced conflicting evidence and cite conflicting authorities as to the meaning of the term 'equipment' in such contracts. We deem it unnecessary to resolve the conflicts.
 
 
 11
 The contract required Marken to do specific work at a specific location. Williston did not become an insurer against all loss or damage to Marken's equipment. Assuming that the truck was included within the term 'equipment,' such inclusion does not establish Williston's liability, unless at the time of damage the truck was being used in connection with operations covered by the contract.
 
 
 12
 At the time of the occurrences in question, Marken, at well No. 3, was 'fishing for drill pipe.'[5] At well No. 4, Big Horn was ready to displace the mud in the hole. This was to be done by pumping oil from the storage tanks into the hole, thereby forcing out the mud. The mud was to be transferred to a tank at the tank battery location for future use in connection with the operations at well No. 3. The responsibility for getting the mud out of well No. 4 was that of Big Horn.
 
 
 13
 The insurance companies argue that as the mud pumped out of No. 4 was later used in No. 3, the operation to get the mud out of No. 4 was for the benefit of the Marken work on No. 3 and, hence, was covered by the Williston-Marken contract. The answer is that it was Big Horn's job to get the mud out of No. 4. It was not part of the work which Marken had contracted to do.[6] Recognition of this fact is shown by the testimony of McCrady that he made a 'loan' of the Marken truck to Claygore. It is substantiated by the fact that at the time of the operations which resulted in the fire no Marken employee was present at the location of the truck. The ultimate use in the operations on well No. 3 of the mud pumped from Mo. 4 is immaterial. Big Horn had to get the mud out of No. 4 and the Marken truck was borrowed for use in that operation, not for the purpose of supplying mud to the No. 3 well. Prior to the use of the mud in the No. 3 well, it was stored in the tanks. We are not concerned with what the situation would have been had the truck been used to transport the pump for use in getting the mud from the tanks to well No. 3.
 
 
 14
 We conclude that even if the truck was included within the term 'equipment' as used in the Williston-Marken contract, Williston has no contractual liability for the damage to the truck because at the time of damage the truck was not being used by Marken to perform any work required of him by that contract.
 
 
 15
 The judgment is reversed.
 
 
 
 [1]
 Hereinafter referred to as Williston and Petroleum, respectively
 
 
 [2]
 Hereinafter referred to as Marken
 
 
 [3]
 Hereinafter referred to as Big Horn
 
 
 [4]
 Hartney v. Gosling, 10 Wyo. 346, 68 P. 1118, 1121; Gilroy v. White Eagle Oil Co., 10 Cir., 201 F.2d 113, 116; 4 Summers, Oil and Gas, 2d ed., 723, p. 150
 
 
 [5]
 As so used, the term 'fishing' means attempting to recover items of equipment left or lost in the hole
 
 
 [6]
 Under the Williston-Marken contract, Williston agreed to furnish 'mud and water and storage facilities at the well location.'