[No. 5495.]
[No. 3165 C. A.]

## PURSE v. PURCELL.

1. **Practice in Civil Actions — Physicians and Surgeons — Witnesses—Cross-examination.**

Where, in an action for a physician's services for treating defendant's children for scarlet fever, defendant denied that the services were of value, it was error to exclude questions asked the physician on cross-examination by defendant as to what the children's ailment was, what medicine he gave, and what their symptoms were.—P. 53.

2. **Practice in Civil Actions — Cross-examination of Parties — Statutory Construction.**

Chapter 95, Sess. Laws 1899, provides that "a party to the record of any civil action * * * may be examined upon the trial, as if under cross-examination, at the instance of the adverse party." Held, that such provision does not limit one's right to cross-examine an adversary who offers himself as a witness in his own behalf.—P. 53.

3. **Appellate Practice—Continuance—Judicial Discretion.**

The granting of a continuance is largely within the legal discretion of the trial court, and its decision will only be disturbed for abuse; but it is not an abuse of discretion to refuse a continuance for absent testimony, where there was no showing that, if the case was continued, the witness would be produced, or her deposition secured.—P. 54.

*Appeal from the District Court of the City and County of Denver.*

*Hon. F. T. Johnson, Judge.*

Action by E. C. Purcell against John Purse, and upon death of plaintiff, his administratrix, Bertha F. Purcell, was substituted. From a judgment for plaintiff, defendant appeals.

*Reversed and remanded.*

Mr. JOHN C. MURRAY and Mr. EDWIN H. PARK, for appellant.

Mr. R. D. REES and Mr. JESSE H. BLAIR, for appellee.

E. C. Purcell, a licensed physician, brought this action against John Purse to recover the reasonable value of professional services, which, at defendant's request, he rendered to defendant's children who were sick of a scarlet fever. The answer denies that the services were of any value whatever, and alleges that plaintiff prescribed for and attended five of defendant's children, two of whom defendant admits had scarlet fever and diphtheria, and says the others had diphtheria, but not scarlet fever—though plaintiff treated all of them only for the latter—and that by reason of defendant's negligence, or want of skill, in making the proper diagnosis and prescribing the appropriate treatment, three of the children died.

Substantially the same matters, alleged as a defense, are set up in two separate cross-complaints or counter-claims, in each of which defendant asks judgment against plaintiff in the sum of five thousand dollars, for malpractice. Both parties introduced evidence, and at its close plaintiff's counsel asked for an instruction to the jury directing a verdict in plaintiff's favor upon defendant's cross-complaints, which the court gave; and thereupon, being of the opinion that plaintiff's bill for services rendered was reasonable, directed the jury to return a verdict for plaintiff for the amount thereof. Judgment was entered upon this verdict in plaintiff's favor, and defendant's cross-complaints were dismissed. Defendant appeals.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

After this appeal was perfected, plaintiff died, and his administratrix has been substituted as appellee. It is appellee's contention, first, that defendant's action for damages set up in the cross-complaint abates with the death of plaintiff; second, that

the evidence was wholly insufficient to sustain such action.

We shall not decide the first point, because we are clearly of opinion that, under the doctrine of *Jackson v. Burnham*, 20 Colo. 532, a case of malpractice was not made out by the evidence. Indeed, defendant does not in his brief press his claim in that behalf, apparently because his own expert evidence precludes a judgment in his favor.

The other question raised on this appeal is as to the propriety of the direction of a verdict in plaintiff's favor for the value of his professional services. It must be admitted that there is no direct, competent evidence as to their value except the testimony of plaintiff himself and two other doctors called by him. All of it tends to show that the bill rendered, and for which judgment was entered, was the customary and reasonable fee for such services as the plaintiff said he performed. In the absence of any evidence of value to the contrary, or of evidence inconsistent with plaintiff's testimony as to the extent or character of the services, it might be that the jury ought to find in plaintiff's favor for the amount claimed; yet it seems clear that the court committed prejudicial error in limiting the scope of the cross-examination of plaintiff by defendant's counsel, for had the questions on cross-examination been allowed, and the plaintiff required to answer, the jury might have found, on substantial evidence, that the services were of less value than, or not so extensive as, plaintiff says they were.

Plaintiff testified in his own behalf merely to the effect that he was a licensed physician and had, at defendant's request, attended the latter's children, and that the bill for which he sued was the customary and reasonable fee, no part of which had been paid. In his complaint he alleged that the

children were sick with scarlet fever, and that the services rendered were on that account. Upon cross-examination he was asked, among other things, by defendant's counsel, what was the matter with the children, what medicine he gave them, and was asked to describe to the jury their symptoms and all the indications of disease which they exhibited. As throwing light upon the extent and value of the services, as well as bearing upon the diagnosis and method of treatment, it was competent under the issues to ask such questions. Plaintiff does not seriously contend that they do not come within the range of cross-examination, but his argument is, that under the act of 1899 (Session Laws 1899, p. 178), which provides that "A party to the record of any civil action * * * may be examined upon the trial thereof, as if under cross-examination at the instance of the adverse party," defendant here might have called plaintiff as his own witness and elicited the information which he sought to educe by these questions on cross-examination; hence, the refusal of the court to permit him to cross-examine his adversary was not harmful. It is true that this statute gives the defendant such right; and it is also true that, had he availed himself of the privilege thereby afforded by subsequently calling plaintiff and cross-examining him, he would not be concluded thereby. But we do not understand that this statute was intended, in the slightest degree, to limit the right of a party to cross-examine his adversary who offers himself as a witness in his own behalf. It grants to a party a right which, under the procedure at common law, he did not have, but it does not abridge any right which he had thereunder. When, as here, plaintiff offered himself as a witness to prove his own case, defendant was not obliged to omit all cross-examination and proceed under this

statute after plaintiff's entire case was closed; but he had the right, at once upon the close of the testimony in chief of the plaintiff, to proceed at once to cross-examine him upon all matters that are proper subject-matters of cross-examination. The questions propounded were germane to the first defense of the answer, which denies that the services which the plaintiff rendered were of any value to defendant. It was necessary for plaintiff to prove that his services were of value, and when he himself testified as to that issue, defendant might properly, by cross-examination, ask what the services were and what the plaintiff did, and as to the symptoms and nature of the malady from which the children were suffering. Had these questions of defendant been answered by plaintiff, it may be that there would have been evidence before the jury from which they might have concluded that the plaintiff's services were not so valuable as he claimed them to be. A case quite in point is, *N. Y. Iron Mine v. Bank*, 39 Mich. 644.

See, also, Thompson on Trials, § 406; *Idaho Mer. Co. v. Kalanquin,* 66 Pac. 933 (Idaho case).

Defendant assigns as error the overruling of his motion for a continuance, because of an excusable failure to have at the trial a deposition of an important witness. Unquestionably the facts to which he says the witness would testify if present, or if her deposition could be obtained, are material under the issues, and defendant showed due diligence in an effort to produce this evidence. But applications for a continuance are largely within the legal discretion of the trial court, and except in case of abuse, its decision upon them will not be disturbed. There was no showing by defendant that, if the case were continued, the witness could be produced, or her deposition secured. Therefore, we cannot say that

the trial court abused its discretion in denying the application for a continuance.

For this error of the court in limiting defendant's right to cross-examination, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.

---

[No. 5677.]

EDMONSTON ET AL. V. ASCOUGH.

1. **Appellate Practice — Cause Not Appealable — Docketed on Error.**

Where an appeal is taken from a judgment not appealable to the appellate court, but over which it has jurisdiction by writ of error, the appeal will be dismissed, and the cause redocketed on error, in accordance with the statute.—P. 56.

2. **Promissory Notes—Sureties as Joint Makers—Former Rule.**

Formerly the rule in this state was, that where one put his name upon a promissory note before delivery, as surety for the maker and to give him credit with the payee, his status was that of a joint maker of the instrument.—P. 57.

3. **Same—Negotiable Instruments Law Not Construed—Evidence Decisive.**

The change, if any, in this regard, affected by the negotiable instruments law, not determined; because, under the evidence in this case, it was clear that the alleged surety intended to become a joint maker.—P. 57.

4. **Same—A Verbal Promise Without Consideration, No Release.**

A verbal promise, without consideration, to release a joint maker and look to the principal maker alone, did not discharge him from liability.—P. 57.

5. **Same—Refusal of Holder to Sue Principal Maker—Insolvency of Latter—Liability of Co-maker.**

Nor does a request by such accommodation maker that the holder of the note sue the principal maker, discharge him from liability upon the holder's refusal and the principal maker's subsequent insolvency.—P. 57.