[No. 6964.]

## PAINTER V. WILCOX.

1. APPEALS AND WRITS OF ERROR—*Presumptions*—The rule that error is presumed preludicial is not of universal application. Where in a bill for a partnership accounting the testimony heard by the referee was reported in full and presented in the record it was held that error in the referee's finding that the partnership was dissolved, was not prejudicial if the statement of the account was correct; that this was the real matter in controversy, and that the partner complaining had the burden of showing that the judgment as finally entered below was erroneous to his prejudice—(641, 642).

2. ——*Harmless Error*—A wrong reason for a correct result is harmless—(648).

3. PARTNERSHIP ACCOUNTING—*Managing Partner Employing the Firm Property for Private Gain*—Where, the partnership subsisting, the managing partner applies the firm properties to his private purposes, he should not thereafter be allowed salary, nor should the firm be charged with his disbursements except as they relate to partnership indebtedness previously contracted. And the managing partner is to be charged a reasonable rental for the occupation and use of the partnership properties, even though the total production thereof does not equal a reasonable rental—(649).

And he is of course to be charged with monies received from the sale of partnership properties.

The rule for the partnership accounting is the same even though the other partner withdrew from participation in the enterprise, without any just cause. The partnership property still retains its character as such, and is to be treated accordingly in the account—(650, 651).

*Appeal from Weld District Court.*—Hon. James E. Garrigues, Judge.

Mr. Edward C. Stimson, Mr. John B. Hutchinson, Mr. P. M. Brereton, Mr. Julius C. Gunter, Mr. John W. Sleeper and Mr. Malcom Lindsey, for appellant.

Mr. Henry J. O'Bryan, for appellee.

Mr. Justice Gabbert delivered the opinion of the court:

Appellee, as plaintiff, brought suit against appellant, as defendant, the purpose of which was to dissolve the partnership theretofore existing between them, and for an accounting. So far as material to notice, the answer of the defendant admitted the existence of the partnership, asked for an accounting and a dissolution of the firm. After the issues were made up, such proceedings were had that a referee was appointed to take an account of the dealings and transactions between the parties from the commencement of the partnership, and for that purpose, to hear and report the testimony, together with his findings of fact, upon which his determination of the account between the parties was based. The referee heard the testimony and made a report exhibiting the account between the parties, which was, in all respects, approved and adopted by the court, and judgment ren-

dered thereon. From this judgment the defendant has appealed.

On behalf of appellant it is urged that the referee erred in finding and reporting that the partnership had been dissolved by mutual consent prior to the date when the action for dissolution and accounting was commenced. In support of this alleged error, two propositions are advanced: (1) That the evidence is insufficient to support this finding; and (2) that such finding is contrary to the respective pleadings of the parties, because it was thereby admitted by both parties that the partnership was in existence, and had never been dissolved.

We may concede, for the sake of the argument, that the finding of the referee under consideration was erroneous, for the reasons given, but such an error does not necessarily justify a reversal. The real question involved is, whether or not the account, as exhibited between the parties as determined by the referee, is right or wrong. Counsel for defendant urge that the referee, followng the theory that the partnership had been dissolved prior to the commencement of the suit, erroneously charged the defendant with certain items, and erroneously refused to credit him with certain items. Conceding this to be true, and also adopting the theory of counsel for defendant, that the accounting should have been taken between the parties and determined by the referee upon the assumption of fact as made by the pleadings, that the partnership was in existence, it is not made to appear, from anything in the record to which our attention has been directed, that the account between the parties, as found by the referee, would, and should have been any different from what it is. As previously stated, the real question is, whether the judgment based upon the report of the referee is right or wrong. Until it is made to appear on

behalf of the defendant that it is wrong, to his prejudice, he is not in a position to complain. A party bringing a case here for review must make it affirmatively appear that the judgment of which he complains is erroneous to his prejudice. It has frequently been held that error will be presumed prejudicial unless it is made to affirmatively appear that it is not. This rule, however, is not universal. The referee was directed to take an account of the dealings and transactions of the parties relating to the partnership from its inception. He did so. The testimony was reduced to writing, and is preserved in the record. It is, therefore, within the power of the defendant to point out wherein the judgment is erroneous to his disadvantage, on an account exhibited upon the theory which he contends the referee should have adopted and followed. Where it is within the power of a party complaining of an alleged erroneous ruling to show from the record that the judgment finally entered is erroneous to his prejudice, as the result of such ruling, he must do so, otherwise it will not be disturbed.

It is not necessary, however, to base an affirmance of the judgment alone upon the reasons already given, as an examination of the carefully prepared report of the referee discloses that it is substantially correct in every particular; and although the evidence upon which his findings are based is, in some respects, conflicting, it is ample to support them. Such being the case, they will not be disturbed, nor is it necessary to review the evidence, except in a general way.

Going to the merits, the real question to consider, is, whether or not, independent of the finding that the partnership was dissolved, the other findings of fact sustain the account exhibited by the report of the referee and the judgment rendered thereon. The partnership was evi-

denced by two contracts entered into between the parties, bearing date March 14th, 1905. The first is what may be designated the contract of partnership proper. From this it appears the purpose of the partnership was to conduct a general farming business, and was to continue for ten years, unless dissolved by mutual consent. Each party was to contribute five thousand dollars. The firm was authorized to engage in the purchase and sale of real estate, and water rights, and buy, sell, or take upon shares, livestock. The capital was to be applied to the purchase of what was known as the Stone Ranch, and the water rights connected with that property. In case any additional money was required to carry on the business, and either partner should advance it, the partner making the advance was to receive a partnership note. The title to all property acquired by the partnership was to be taken and remain in the name of Wilcox until such time as Painter should discharge all indebtedness he might owe the firm. All checks, notes, and evidences of credit or indebtedness were to be signed by Wilcox only, for and on behalf of the firm. Painter was to manage the business, but was not authorized to make any contract for the purchase, sale, or lease of the property of the firm without first having the consent of Wilcox, except that he was authorized to hire and discharge necessary help. For his services, Painter was to receive three dollars per day for his time actually devoted to the management and care of the business. The contract also provided that at least once a year, or as often as mutually agreed upon, an accounting should be had of the affairs and business of the co-partnership, a balance struck, and the net profits divided.

The supplemental, or second, agreement provided that, whereas, Wilcox had advanced one thousand dollars

to purchase the Stone Ranch, and had executed notes for the balance of the purchase price for that property in the sum of $6,500, secured by mortgage thereon, that Painter was to execute his notes for one-half of the money so advanced and the indebtedness incurred by Wilcox in the purchase of the ranch, which should be a first lien upon the property and income of the firm, until Painter discharged his obligation connected with the purchase, when he was to receive a deed from Wilcox for a one-half interest in the ranch and other property of the firm.

Turning to the report of the referee, we find it there stated, that the business of the firm was entered upon shortly after these contracts were executed. Painter took charge of the ranch. Farming implements, stock, and other articles necessary to carry on the business, were purchased and placed upon the farm. Improvements were made. Neither party advanced the five thousand dollars that each was to put into the firm, but advances were made from time to time by the respective parties in addition to that named in the supplemental agreement, for the purpose of carrying on the business, or, for this purpose, the obligations of the firm were executed with the consent of both.

Among the items purchased in December, 1905, was 187 head of steers, for which the firm paid, or agreed to pay, $3,831.86. These steers were known, and are referred to in the report of the referee, as the P. W. herd, and their purchase was sanctioned by Wilcox.

In January, 1906, Wilcox, having advanced considerable money, became dissatisfied with the management of the partnership business, refused to further proceed with the partnership affairs, or to make any further advances. Subsequent to this time, Painter bought stock

at divers times, without the knowledge or consent of Wilcox, for which he paid, or incurred obligations, in an amount exceeding ten thousand dollars. Considerable of this stock was registered, and the price paid was very much more than that paid for ordinary cattle. Referring to these transactions and others subsequent to January, 1906, the referee, after calling attention to the fact that the partnership articles inhibited Painter from making such purchases, or incurring obligations therefor without the consent of Wilcox, states:

"The plaintiff denies the authority of the defendant to make these purchases, aside from the P. W. herd, and I think the plaintiff's contention in respect to this must be admitted. * * * These purchases, subsequent to the first day of December, A. D. 1905, were, moreover, made in the individual name of the defendant, and not in the name of the firm. The defendant, in his testimony, asserted that all the cattle subsequent to the first purchase were, in fact, purchased for the partnership account and benefit, although purchased in his own name All his conduct in regard to them seems to dispel this contention. He mortgaged them in his own name, branded them with his own brand (4-N), and exhibited them, advertised them, and sold them in his own name. In his book of account (Exhibit C, page 59), appears a memorandum of the properties of the firm then on hand, January 15, 1907, in these words: "Bal. on hand, estimated, cattle, 36 hd. on ranch and out on range." Now, while this number does not agree at all with the number of the P. W. cattle, which, according to his statement of sales of that herd (Exhibit D, 27) ought to have been on hand, if the purchase subsequent to December first, 1905, were included, he would have had on hand more than twice the number stated in this memorandum. For

these reasons, the defendant is not allowed credit for moneys expended by him on account of purchase of cattle subsequent to the first day of December, 1905. The purchases of cattle subsequent to the first day of December, 1905, when the P. W. herd was acquired, were made in the sole name of the defendant; in his own name he executed the promissory notes, evidencing the purchase price; in his own name he executed mortgages of the different animals purchased; in his own name he advertised his herd of registered cattle, and in his own name he exhibited and sold them. And in the negotiations of these purchases, if the testimony of Mr. and Mrs. Hathaway is to be believed (and they are not contradicted by the defendant), he announced that if there was money in cattle, he intended to have it for himself. Now, these cattle, to the number of over three hundred, and of the value of over ten thousand dollars, were kept upon the partnership property, cared for by its employes, fed and attended at the partnership expense. The time of the defendant was largely given to their management, exhibition and sale. They were mingled with the partnership herd purchased in December, 1905, and sold with them, and the defendant himself declares it is impossible to determine, except approximately, what particular moneys were received for them, either the one or the other. * * *."

At this point the referee calls attention to the fact that during the period defendant was conducting the business in his own name, he operated, in connection with the partnership ranch, other premises on the opposite side of the river, the title to which was vested in himself, his wife and his sister-in-law; that partnership animals, implements and utilities were used in fencing, improving and cultivating these premises; and that it was impossible to determine, with any degree of certainty, how much of

the defendant's time was so occupied; that the defendant sought to justify this diversion of partnership properties to the cultivation and improvement of the private property across the river by suggesting that the product of those premises was used by the partnership. Continuing the report, the referee says:

"Considering the entire impossibility of ascertaining what ought to be charged against the defendant on account of his own time in the caring for and sale of the 4-N herd, and the unregistered cattle, the impossibility of determining with certainty what ought to be charged against him for the time of the employees upon the partnership ranch, in caring for these cattle, and in improving and cultivating private lands of himself, his wife and sister-in-law, a just result can only be arrived at by regarding the partnership as, in fact, dissolved in January, 1906, treating the whole enterprise thereafter as the private affair of the defendant, and charging against him a reasonable rental for the occupation and use of the co-partnership property. * * * The defendant, from that time, seems to have managed the partnership property, and carried on business, in his own name and for his own account. He expressly testifies that since January, 1906, he carried on the ranch in his own name, and that the moneys arising from the cultivation of the ranch were his moneys. He bought the cattle and hogs in his own name, executed promissory notes and mortgages to evidence the purchase money in his own name, advertised them and sold them in his own name, bought supplies for the ranch in his own name, he contracted in his own name with another as to the crop to be planted and the amount to be paid therefor, and except in the single instance of one lease of the partnership lands, he made no transaction whatever in the name of the firm, nor did any

act, in any way, evidencing that the firm was interested in or liable for his doings, except the entries made in his private book accounts.

I find, therefore, that the firm was dissolved on the second day of January, 1906. That no salary is to be allowed defendant after that date, and that the firm is not to be charged with his disbursements, except as they are related to indebtedness previously contracted."

As we understand the argument of counsel for appellant, it is contended that the referee erred, in finding as a fact that the partnership was dissolved in January, 1906, and for that reason refusing to give Painter any credit for disbursements, obligations incurred, or for salary after that date. It may be conceded that the partnership was not dissolved, either in law or in fact; but, however that may be, it appears from the findings of the referee that the transactions after January, 1906, which counsel for Painter contend should have been treated as partnership transactions, were not, in fact, transactions of that character, but were those of Painter alone, acting for himself, and not for the partnership, although he was making use of the ranch property which belonged to the firm for his sole personal benefit. Consequently, independent of the fact of whether the partnership was, or was not, dissolved in January, 1906, the referee very properly held that the firm should not be charged with disbursements after that date, except as they related to indebtedness previously contracted on behalf of the firm; that the business which Painter thereafter transacted in his own name, should be treated as his private affair, and that he should be charged on this account a reasonable rental for the occupation and use of the co-partnership property. So that, although the referee may have given a wrong reason for the conclusion that after January,

1906, the business was that of Painter, and not that of the firm, it will not work a reversal, when it appears that the accounting is, nevertheless, right.

We think it is clear, on principle, that if a member of a co-partnership avowedly transacts business in his own name, and for his own benefit, although it might be of a character which the partnership was formed to engage in, and, for the purpose of carrying on the business on his own behalf, makes use of co-partnership property, that on an accounting he is not entitled to have such transactions considered as firm business, and should account to the firm for the reasonable rental value of the co-partnership property which he has utilized exclusively for his benefit. It was upon this theory that the referee proceeded in taking an account with respect to the transactions after January, 1906, giving Painter, however, credit for money expended in discharging firm indebtedness incurred prior to that date, and charging him with money received for partnership property, and also charging him with reasonable rental value of the partnership property which he used in carrying on his own private business. With respect to all prior transactions, it appears the parties were properly debited and credited for moneys received and disbursed in connection with the partnership affairs.

It is urged that the referee erred in debiting the defendant with the amount charged to his account for the rent of the ranch, tools, and other property belonging to the partnership. This contention is based upon the assumption that the total production of the ranch for the period for which Painter was charged rent did not equal the amount of the rent charged. We do not deem this as material. Besides, it appears that it was impossible to ascertain from the testimony the total value of the

production of the ranch during this period. On this subject the referee reports, in substance, that some of the cattle which the defendant was handling were kept in the partnership stables, fed from the products of the ranch, and pastured on the premises; that defendant's household, five in number, were fed and maintained in part from the farm products, lived upon the ranch, and that, in view of all this, it was difficult, if not impossible, to ascertain the value of the products, and therefore proper and reasonable to charge the defendant with the fair rental value of the premises, as shown by the testimony was the annual and customary rental of lands and water rights in that vicinity. We think this was correct. As the defendant was practically using the ranch for his sole benefit, the value of such use should be determined by ascertaining the fair rental value, and not the value of the production.

Counsel for appellant contend the testimony discloses that plaintiff withdrew from the partnership without just cause, and for that reason it should have been held in the accounting that he was only entitled to a fair compensation for work done and money advanced to the date of his withdrawal, and deprived of all interest in the partnership property. In support of this claim, *Beaver v. Lewis,* 14 Ark. 138, is cited. The facts in that case are such that the holding of the court is in no respect applicable to this. In that case the partners entered upon a joint enterprise, which, in order to be utilized, had to be completed. Before its completion, one of the partners, after spending some money and several months' work, abandoned the partnership without just cause. This was held to work a dissolution, and as the enterprise was completed by the others, the party withdrawing had no specific interest in the property as completed, but was

entitled to a fair compensation for his work and money advanced. In the case at bar, if it should be conceded that the plaintiff withdrew in such circumstances as to work a dissolution (a matter, however, which the defendant did not claim in his pleadings), the property then belonging to the partnership, consisting, as it did, of a ranch, stock, tools, and other items, still belonged to the firm, and upon an accounting, had to be, and was, treated accordingly.

An examination of the record convinces us that the accounting is just, and fully sustained by the testimony in the case. The judgment entered thereon should, therefore, be affirmed, which is accordingly done.

*Judgment affirmed.*

Mr. JUSTICE BAILEY concurs.

Mr. JUSTICE MUSSER, without expressing any opinion on matters of fact or law, other than is embraced in his special concurrence, concurs in the affirmance of the judgment for the reason only that the findings of the referee discloses that the business conducted by Painter after the time at which the referee found the partnership was dissolved, was conducted by him in his own name and professedly for his own benefit to the exclusion of Wilcox, and the accounting was thus made upon a basis on which Painter had placed himself, and from this view point the findings of the referee appear to be right.

Decided May 6, A. D. 1912. Rehearing denied July 1, A. D. 1912.