## No. 15,530.

SHEARER *v.* SNYDER.

(171 P. [2d] 663)

Decided July 22, 1946.

Mr. Frank Delaney, Mr. Herbert Gordon, for plaintiff in error.

Mr. Allyn Cole, for defendant in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

This litigation arose out of a dispute between plaintiff in error Shearer and his brother-in-law, Snyder, who is defendant in error, concerning a contract for services to be rendered by Shearer, which contract was executed December 8, 1928. Suit was for $25,800 alleged to be due for salary earned. At the conclusion of Shearer's testimony—he being the only witness—Snyder moved for a nonsuit, "for the reason that there is no evidence to support the claim and it appears conclusively from the evidence here that each and every part

thereof has long since been barred by the statute of limitations." The trial court, sitting without a jury, sustained the motion and entered judgment accordingly, to reverse which this writ of error is prosecuted. Reference will be made to the parties as plaintiff in error and defendant in error, or by name.

As casting some light on the controversy, it may be noted that the litigation was started when Snyder sued Shearer for $27,000 for advances and loans allegedly made to him, and Shearer's claim for $25,800 salary formed the basis of a counterclaim to that suit. Before trial, the court, on Snyder's motion to so amend, permitted two of the original items, totalling $11,300, to be stricken without prejudice. At the trial Snyder withdrew all alleged items remaining in his complaint, and the case was tried solely on Shearer's counterclaim.

The counterclaim was based on a letter written by Snyder to Shearer, December 8, 1928. The language relied upon reads as follows: "The Square S land and Cattle Company will pay you wages at the rate of Eighteen Hundred Dollars a year from the time you start. I personally will pay you Eighteen Hundred Dollars a year, making a total of Thirty Six Hundred Dollars." Shearer, in explanation of his claim, stated that the $25,800 is "at the rate of one hundred and fifty dollars a month from February 9, 1929, until the middle of 1942."

At the time the letter was written and the offer therein accepted by Shearer, he was working as a salesman in Kansas City, and the letter offered him "complete charge of my personal ranches, known as the Taylor and the V. T. Ranches," and advised him that he also was to become "General Manager and Vice-president in complete charge of all of the property of the Square S Land and Cattle Company," to execute the policy of its board of directors.

Shearer came to Colorado about February 1, 1929, took up his abode on the Taylor ranch and assumed his

duties as agreed. He had been on the premises but a short time when a different agreement was entered into between the parties "whereby he [Snyder] was to buy cattle for me [Shearer] and the cattle were to be run under my brand and the Cross L was to be used as the headquarters for those cattle." About the same time Snyder disposed of his personal ranches, known as the Taylor and V. T. Ranches, after which, as Shearer stated, Snyder had nothing "to do with the management operation or direction of how those properties were managed or operated" and all of Shearer's salary was paid for a time "a hundred and fifty dollars from the Square S Land and Cattle Company and a hundred and fifty dollars for that short period was on the Cross L account." This was prior to 1930 or 1931, and thereafter the entire salary was charged to and paid by the Square S Land and Cattle Company. At the same time Shearer changed his residence from the Taylor ranch to the Square S ranch. During the depression his salary was reduced to $2,400 a year without protest, and it remained at that figure down to 1940. Shearer admitted that he had never made any demand on Snyder "that he pay any of these items you claim under the contract." In addition it appears by a series of audits in the record that Shearer was at all times advised fully as to the accounts of the various companies involved showing various salary payments and advancements to him, none of which he ever claimed as being incorrect, but he contended they had nothing to do with his personal contract with Snyder, although Snyder was president of the Square S Land and Cattle Company, which since 1931 had "the entire possession, under leases, of all of the property of the Snyder family." Shearer was the only one of the officers of the company who received any salary.

Shearer admitted that Snyder paid him a few months salary when he first came to Colorado, but apparently no credit was given therefor because, as already noted, his claim for $25,800 began to run, according to his own

calculation, at the very time he came to Colorado.

As to the services under the contract, in response to the question, "And was that done pursuant to the original arrangement or a different arrangement?" Shearer stated, "I think it was a little different arrangement with respect to those two ranches at a later date." Shearer did testify as to certain alleged services rendered Snyder personally in connection with some litigation, buying some cattle, and clearing up of tax liens, but he does not say that they were in connection with the two ranches named in the contract.

The specification of points is based on the following contentions: 1. Shearer made out a prima facie case, and hence the sustaining of the motion for a nonsuit was error. 2. The court erred in admitting in evidence the audits of the companies. 3. The court erred in ordering that certain items alleged in Snyder's complaint might be withdrawn "without prejudice." 4. The defense of the statute of limitations was not properly raised.

■■ 1. At the outset we wish to state that motions for nonsuit are no longer proper. *Toy .v. Rogers,* 114 Colo. 432, 165 P. (2d) 1017. The motion should have been one to dismiss. R.C.P. Colo, Rule 41 (b) (1) which reads in part: "After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Whether there is a difference in substance between a motion for a nonsuit under the code (Sec. 184 Fifth) and the motion to dismiss under Rule 41 (b) (1), supra, we do not decide, because no point is made of it. We treat the motion filed as one to dismiss under the new rule.

■■■■ In considering disposition of this case, we have in mind the rule that, "A motion for nonsuit admits every inference of fact that can legitimately be drawn

from plaintiff's evidence." *Westwood v. Richards,* 109 Colo. 17, 122 P. (2d) 247; in this case defendant's evidence. As already noted Shearer was the only witness, and we think none of his testimony supports any inference that would sustain his cause of action. No good purpose would be served by a further analysis of his testimony other than as above recited. All this evidence tended to show that the contract was abrogated by mutual consent of the parties. It is true that the trial court made no special finding on the point, but his remarks at the close of counsel's argument, "that is to put a construction upon the transactions that the parties themselves did over a period of time by their own course of conduct," could not, in the light of this record, be reasonably construed other than as a finding of abrogation. Adopting this view, his reference to the statute of limitations as a possible basis for his conclusion may be treated as surplusage, as being a wrong reason for a right conclusion. *Dennison v. Barney,* 49 Colo. 442, 113 Pac. 519; *Wolf v. Pomponia,* 52 Colo. 109, 120 Pac. 142; *Painter v. Wilcox,* 52 Colo. 639, 125 Pac. 503; *McMillan v. Harburt,* 74 Colo. 161, 219 Pac. 1070. That the court will adopt the construction of the contract as acquiesced in by the parties over a long period of time is also a well established principle of law. *Caldwell v. States,* 89 Colo. 529, 6 P. (2d) 1; *Thompson v. Sweet,* 91 Colo. 552, 17 P. (2d) 308; *Hinkle v. Blinn,* 92 Colo. 302, 19 P. (2d) 1038.

2. Plaintiff in error complains of the trial court's permission to Snyder's counsel to go outside of the proper scope of cross-examination and admit exhibits (the audits of the land and cattle company) which should have been introduced as a part of his defense. The objection below was that these exhibits were incompetent and immaterial, not that their admission was without the scope of cross-examination. That the audits were competent cannot be gainsaid because they tend to prove that the contract sued upon was abrogated and

Shearer was charged with notice of their contents because he was the general manager of the company and regularly received copies of these audits, and they were made up in part from his own figures. Counsel for plaintiff in error had previously indicated that he wanted the transactions of the Square S Company introduced "to the extent they cast light and explain the services rendered for the plaintiff." We think these audits do just that. Assuming they may have been admitted out of the usual order, the point is immaterial where Shearer, a party in the case, was the only witness. It was not necessary for plaintiff to wait for the close of defendant's case to make his cross-examination. *Purse v. Purcell*, 43 Colo. 50, 53, 95 Pac. 291, and R.C.P. Colo., rule 43 C. (b). The order of proof was in the sound discretion of the court. *Kline v. Slater*, 95 Colo. 489, 37 P. (2d) 381.

3. When, if ever, defendant in error attempts to bring another suit on the items he withdrew will be the time to determine whether they should have been stricken without prejudice. Following their withdrawal they were no longer any part of this litigation.

4. Having concluded that the contract was abrogated by mutual consent, the statute of limitations could have no application, and permitting the pleading of that defense was harmless error.

We are not overlooking counsel's complaint of the court's refusal to admit his tendered exhibit No. 2, a letter written by Snyder to Shearer prior to the signing and approval of the contract sued upon. He concedes the rule that would exclude it, viz., all prior matters are presumed merged in the subsequent written agreement. In addition Shearer testified that there was "considerable correspondence in addition to this contract." Counsel's own pleading limited it to the letter upon which the contract was based. See, *James v. James*, 64 Colo. 133, 170 Pac. 285.

We find no reversible error in the record and the judgment is affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE STONE concurs in the result.