*Charles & Dillon*, for appellant.
*G. B. Reed*, for appellee.

- ►●◄ -

## MANVILLE *v.* PARKS *et al.*

(*Supreme Court of Colorado, December Term, 1883—Error to the County Court of Lake County.*)

1. MINING PARTNERSHIP. It was not intended by the opinion in *Charles v. Eschelman*, 5 Colo., 107, to restrict the definition of a mining partnership to cases in which the mine is owned by the parties working it. Such part-nership may exist as well where the parties have an interest merely in the working of the mine, or in carrying on mining operations, as where they own the mine itself.

2. SAME. What constitutes such partnership is a question of law; whether such partnership exists, is a question of fact. P. Y. B. S. & H. contracted with B. for an option to purchase an interest in the Tip-top mine, at a certain price within ninety days, and by the terms of the con-tract were to have the privilege of working the property, the interest of each in the enterprise being defined in the contract, (which was at first a

bond, and then a deed placed in escrow,) and in pursuance of said arrangement they took possession of the mine, and incurred liabilities in working it: *Held*, that these facts establish the relation of partnership between them, with respect to the mining operations for the carrying on of which the debt sued on was contracted.

3. SAME. In such case, the authority of each partner to bind the others is an implied one, and as between the parties themselves, there may exist, by express agreement, a limitation upon the general implied authority; but third persons dealing with the firm, without notice of such restrictions, are not affected thereby with respect to dealings within the scope of the partnership business.

4. PRACTICE—DEFAULT. Where there are several defendants, some of whom file answer and some do not, the default of those defendants for failure to answer, can as well be recited and entered at the time of entering the final judgment upon the trial of the cause, as before. The only purpose of a default is to limit the time during which the defendant may file his answer, which time never extends beyond the trial and judgment. The taking of default is a privilege of plaintiff, and if he chooses to waive its exercise previous to the trial, it is not a matter of which the party in default can complain. The validity of a judgment upon a trial had, cannot be made to rest upon a favor by the plaintiff to the defendant, or the waiver, till then, of a statutory privilege.

STONE, J. The plaintiff, Manville, sued the defendants to recover the price of certain goods sold and delivered, for which the complaint alleged a joint and several promise to pay on the part of defendants. Two of the defendants, Parks and Yates, answered on their own behalf, denying the sale and delivery to them, and denying any promise to pay by them, or either of them. The defendant, Smith, filed a separate answer, denying the sale and delivery, and denying a promise to pay by all or any of the defendants of the sum alleged to be due. The other two defendants, Bush and Henderson, filed no answer.

The testimony brought up by the record, discloses the following facts:

Bush proposed to Parks and Yates that they go into a mining operation together, to make some money. Parks and Yates knew that one Brandon had a mine, one-half interest in which could be secured to develop and purchase, whereby money could be made if it turned out well, and it was proposed that Parks and Yates make the necessary arrangement with Brandon for this purpose. Accordingly, Parks and Yates made a preliminary arrangement with Brandon, and afterwards a meeting was had at the office of P. & Y. in Leadville

where were present Brandon, Parks and Yates, Bush and Smith, and Henderson, at which meeting an agreement was made, and a bond for a deed of a one-half interest in the mine in question, called the Tip-top mine, was executed, giving the defendants the privilege of working the mine for ninety days, with the option of purchase within that time. The several interests which the parties were to have in the mine were agreed upon, and mentioned in the bond. A day or two afterwards, this bond was taken up by agreement of the parties, and a deed in lieu thereof was executed by Brandon, which was deposited in escrow, conditioned like the bond, for payment of the agreed price of the half interest in the mine within ninety days, during which time the grantees were to have possession for the purpose of working and development for taking out ore which should be found therein. The grantees named in the deed were Bush, Smith, Henderson and Parks, and Yates, and the interest of each respectively was expressed as in the bond previously.

This matter being arranged, it was proposed by Bush that Henderson take charge of the mine as manager, or foreman, and prosecute work thereon, and no one objecting to such proposition, it was assented to, and accordingly Henderson immediately employed men, purchased the necessary supplies of tools, etc., and prosecuted work on the mine for two or three months.

Parks and Yates both testified that by an understanding between them and Bush, they were to pay no money for their interest in the mine, nor for working the same, but that such interest was paid for by their legal services in procuring the contract with Brandon, drawing up the papers, etc., and that they had not paid nor been called on to pay a dollar in money for such interest, or for working the mine. Henderson testified that he was to be allowed five dollars per day for his services in superintending the work, and that these wages were to apply in payment of his share in the mine. He also testified that Smith furnished $120 towards the expenses of the work, and that Bush furnished all the rest of the money that was paid on account of such expenses.

In pursuance of his authority as manager or foreman of the working of the mine, Henderson purchased of the plaintiff

certain supplies, consisting of tools, powder and fuse, for blast-
ing, etc., necessary for working the mine, which goods were so
purchased by Henderson on behalf of the parties interested,
and were sold by the plaintiff, as testified to by him, on the
credit of said parties, Henderson informing him at the time of
the purchase, who the parties in interest were, and naming each
of the defendants as partners in the enterprise. Plaintiff knew
the defendants personally, and Bush was present with Hen-
derson when some of the purchases was made in the store of
the plaintiff. Henderson testified that he knew nothing of
any understanding that Parks and Yates were to pay no part
of the expenses, as testified to by them, and the plaintiff had no
knowledge or notice of such fact or condition until after the
controversy arose respecting payment for the goods purchased
from him by Henderson, on behalf of all the defendants.

The County Court, which tried the case without the in-
tervention of a jury, found as follows: "First, That from the
evidence it is not shown that the said defendants ever entered
into a mining copartnership for the purpose of working,
carrying on or developing the said Tip-top mine. Second,
That the defendants never gave the said Henderson any
authority to purchase the said goods from the plaintiff in their
names, and that in fact said Henderson never had any au-
thority in law or fact to purchase said goods, or any part of
the same, or to bind them in any way or manner for the price
and value of said goods, or any part of the same; and, Third,
That the said defendants are entitled, under the facts proven
and the law, to a judgment against the plaintiff for their costs
in this action by them paid, laid out and expended, and that
the plaintiff take nothing by this action."

Judgment was rendered in accordance with these findings,
and the principal question to be determined upon the errors
assigned, is a mixed question of law and fact: Were the find-
ings and judgment in accordance with law under the state of
facts disclosed by the evidence?

The case was tried below, and is argued here, upon the
theory that the liability of the defendants depends upon
whether the relation existing between them, in respect to the
mine and its working, constituted a partnership. In *Charles
v. Eschelman*, 5 Colo., 107, it is said, that "A mining partnership

is held to exist where the several owners of a mine co-operate in the working of the mine;" and the Court then proceeds to point out some of the differences between a mining partnership and an ordinary trading partnership; but we apprehend that this language of the Court, while applicable to the case before it, was not intended to restrict the definition of such partnership solely to cases where a mine is owned by the parties working it; for it is evident that a mining partnership may exist as well where the parties have an interest merely in the working of the mine, or in carrying on mining operations, as where they own the mine itself. Indeed, in the cases where the question of mining partnership first arose in the English Courts, it was doubted whether the joint, or joint and several owners of mines, who combined to realize and enjoy the profits of the estate under a general system of management, should be considered other than joint tenants, or tenants in common of the land, not subject to the laws of partnership; while on the other hand a combination for the working of mines merely, or as a paramount object, and trading and dealing in the products, would constitute a partnership for such purpose. But these views were subsequently modified, so that for many years both English and American authorities have held that co-tenant owners, as well as lessees or parties having only equitable interests in the property, or holding under license to work, or develop, or where the owner furnishes the mine and another the capital and labor, under an agreement to share the profits of the mine jointly, in all such cases, there may be a partnership for mining purposes.

For a concise review of rules and decisions upon this subject see Rockwell on Mines, chapter V, and the case of *Skillman* v. *Lachman*, 23 Cal., 290, and where, as also in the case of *Charles* v. *Eschelman*, 5 Colo., the distinguishing differences between mining and ordinary partnerships are pointed out.

Whether a partnership exists, is a question of fact; what a partnership is, is a question of law. Parsons on Partnership, p. 7.

We think the facts in this case fully establish the relation of partnership between the defendants, with respect to the mining operations, for the carrying on of which the debt here sued for was contracted. It was one of those mining partnerships, so

common in this country, formed for the purpose of carrying on mining operations in a particular adventure, combining some of the incidents of an ordinary partnership, and some of the incidents of a tenancy in common. (*Settembre* v. *Putnam*, 30 Cal., 493.) To the extent of their interest in the property they were tenants in common, and in the working of the mine they are to be considered as partners. (*Doughterty* v. *Creary*, 30 Cal., 300; *Duryea* v. *Burt*, 28 Cal., 569; *Skillman* v. *Lachman*, 23 Cal., 200.) Upon the contract with the owner of the mine the defendants had an option of the property in which the respective intersts of each were defined and understood, while the working of the mine was for their joint benefit and profit, establishing such a community of interest in the adventure as constitutes a mining partnership. Parsons on Partnership, *67; *Duryea* v. *Burt*, *supra.*

Mr. Parks himself testifies that the bond was to purchase the property, and contained a condition "that Mr. Bush and his party desired to purchase the property, and were purchasing it *to take out mineral,* and it run for sixty or ninety days or more, *for working the property,* and pay money for the mine." Mr. Yates, in his testimony, says: "Mr. Bush inquired of Mr. Brandon about the working of the mine, and Brandon explained to Bush exactly how the mine ought to be worked; that there ought to be a tunnel run to connect with a certain shaft on the hill, and Bush and Brandon settled the thing finally." Yates further stated, on cross-examination, that the matter of working the mine was perfectly understood; that Bush and Henderson made the office of Parks & Yates their headquarters; that he, Yates, frequently inquired of Henderson how the mine was getting along, and that he made such inquiries on account of his interest in the mine. We think this and the other testimony in the case upon this point fully establishes the fact that there was a joint interest and co-operation of all the defendants in the working of the mine, and such interest and co-operation constitutes a mining partnership.

"A partnership may be implied from the acts of the parties, as well as by express intent and agreement. It is not necessary that the intention of being partners should be expressed in words, for the law supplies the want of these words." (Parsons on Part., 87.) And even although parties may not intend to

become partners, yet, if they enter into such business relations and carry on such acts as in law constitutes a partnership, they are no less partners than if they had fully intended to become such.  *Id.* 86.

In seeking to establish a partnership relation, it is a rule of evidence that less strictness of proof is required where partners are sued, than where they themselves sue as such.  Greenleaf's Ev., Sec. 483.

And while the members of these mining partnerships may not possess implied authority to bind the company or firm by a promissory note, or for money borrowed to carry on the business, yet as an incident of such partnership they have authority to bind each other by dealings on credit for the purpose of working the mines, if it appears to be necessary or usual in the management and course of working the mines.  *Skillman* v. *Lachman, supra.*

In this case the articles purchased of the plaintiff were essential to the carrying on of the business, and the accomplishment of the purpose of defendants in working the mine, and the debt being created in the necessary and usual course of the business, and within the scope of the partnership adventure, the individual member who made the purchase had lawful authority to contract the debt and to bind his co-partners thereby.

The general principle which lies at the foundation of a partner's liability, is that every partner has full and absolute authority to bind all the partners by his acts or contracts in relation to the business of the firm, in the same manner and to the same extent as if he held full powers of attorney from all the members.   Parsons on Part., 95.

This rule rests upon the doctrine of principal and agent, and indeed, it may be said that partnerships are but modified forms of the relation of principal and agent.

Aside from the differences which exist between a mining partnership and an ordinary commercial partnership, none of which are involved in this case, the principles and rules of law applicable to the latter, also govern the former.   Hence, the defendant Henderson did not require special or express authority from the other partners in order to bind them in the purchase of the goods from the plaintiff.   His authority, im-

plied by the law of agency, arising out of the partnership relation between the defendants, was ample.

True, this authority of each partner to bind the others is an implied one, and as between the partners themselves, there may exist, by express agreement, a limitation upon the general implied authority, but third persons, dealing with the firm without notice of such restrictions, are not affected thereby with respect to dealings within the scope of the partnership business. Parsons Part., 95.

Hence, it is no defense, in this case, that it was agreed between the partners, if such be the fact, that the defendants, Parks and Yates, were not to be chargeable with the expenses of the business beyond their contribution of legal services as claimed, for however binding this might operate upon the partners *inter sese*, it could not affect the plaintiff, who dealt with them without any notice of restriction upon the individual liability of particular members. Parsons Part., 94, 130; *Wood & Oliver* v. *Vallette et al.*, 7 O. St., 172; *Burgrum* v. *Lyell et al.*, 2 Mich., 102; *Lyell & Zeller* v. *Sanbourn, Id.*, 109; *Fisher* v. *Bowles*, 20 Ill., 396; Greenleaf Ev., Sec. 481 and cases cited.

As is said in *Winship* v. *Bank of U. S.*, 5 Pet., 561, " It is usual to buy and sell on credit, and if this be so, the partner who purchases on credit in the name of the firm must bind the firm. This is a general authority held out to the world, to which the world has a right to trust. The articles of copartnership are perhaps never published. They are rarely if ever seen, except by the partners themselves. The stipulations they may contain are to regulate the conduct and rights of the parties as between themselves. The trading world, with whom the company is in perpetual intercourse, cannot individually examine these articles, but must trust to the general powers contained in all partnerships. The acting partners are identified with the company, and have power to conduct the usual business in the usual way. This power is conferred by entering into the partnership, and is perhaps never to be found in the articles. If it is to be restrained, fair dealing requires that the restriction should be made known. These stipulations may bind the partners, but ought not to affect those to whom they are unknown, and who trust to the general and well established commercial law."

None of the defendants, in their answers, set up a special partnership or averred any limitation of liability as partners, and hence evidence of any such restriction was inadmissible. To render such evidence admissible, it was essential to plead such limitation, and also aver notice thereof to the plaintiff previous to purchase of the goods. Greenleaf Ev., Sec. 485; *Lammie* v. *Kintzig*, 1 Mont., 295.

Upon the uncontradicted evidence in the case, both the partnership of all the defendants, and their liability as such to the plaintiff for the amount claimed, were established as conclusions of law, and the plaintiff was entitled to the judgment demanded.

Another question presented relates to the subject of default. It is argued by counsel for defendants that no judgment could have been properly rendered against those defendants who failed to answer, for the reason that a default was not first taken against them for failure to answer. We do not regard this as a valid objection. The default could as well be recited and entered at the time of the rendition of final judgment as before. The taking of a default against a defendant upon failure to plead, is a privilege of the plaintiff, and if he choses to waive it previous to trial, it is not a matter of which the party in default can complain. The only purpose of a default is to limit the time during which the defendant may file his answer, and that time never extends beyond a trial and judgment. *Drake* v. *Davenick*, 45 Cal., 455.

There is no difference in principle between a final judgment against a defendant in default for failure to answer, and a judgment against a defendant *nil dicit*. And it has been held that where a final judgment has been rendered against one who was in default, the taking of a default, " if it was essential to the orderly conduct of the proceedings," will be presumed when the contrary does not appear. *Miller* v. *Miller*, 33 Cal., 353.

Under common law practice, the summons first issued, and the declaration was not filed until the first day of the ensuing term, or under our former practice, ten days before the term, and thereafter the defendant answered only when he was ruled so to do by order of the Court. Under the Code practice the conditions of the default are prescribed by statute. If the

plaintiff fails to take a default before trial, this is a favor to defendant of which he cannot complain or reap advantage. The validity of a judgment, upon trial had, cannot be made to rest upon a withholding by the plaintiff of a favor to defendant, or a waiver of a statutory privilege.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

*Louis Branson*, for plaintiff in error.

*R. D. Thompson*, *W. H. Nash*, and *T. A. Dickson*, for defendants in error.