## No. 12,717.

### THOMPSON ET AL. *v.* SWEET.
(17 P. [2d] 308)

Decided November 28, 1932. Rehearing denied December 29, 1932.

Mr. WALTER E. SCHWED, Messrs. PONSFORD & PENDER, for plaintiffs in error.

Mr. ERNEST MORRIS, Mr. C. E. WAMPLER, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error are hereinafter referred to as the partnership, and defendant in error as Sweet.

Sweet brought this action against the partnership to recover damages for its breach of a written contract to receive and pay for 1,600 head of cattle which he, by that contract, sold to it. He obtained a verdict for $16,592.13, remitted $764.21 thereof, and had judgment for the bal-

554

ance. To review that judgment the partnership prosecutes this writ.

The contract sued on is Exhibit A. At the time of its execution a cash payment of $5,000 therein provided for was made by the partnership and is still retained by Sweet. Before the delivery date the partnership, by written contract, Exhibit B, resold the cattle to one Wood, who also refused to receive them. Sweet maintained that he then resold the animals, by four separate and approximately equal shipments, on the Kansas City, St. Joseph, Omaha and Denver markets respectively. Judgment was first entered against the partnership. This was later amended, on Sweet's motion, and entered as a joint and several judgment.

Counsel for the partnership argue their 103 assignments under six propositions. These may be thus briefly stated: The court committed reversible error in the following particulars: (1) In construing Exhibit A as a contract of sale, whereas it was a mere option to purchase; (2) in excluding evidence that at the time of the execution of Exhibit A, the parties agreed that the partnership "should not be bound unless it elected to pay the balance"; (3) in admitting in evidence Exhibit B; (4) in giving and refusing certain instructions; (5) in holding that there was sufficient proof of the resale by Sweet of the animals in question; (6) in entering a several judgment.

 1. The first, and in fact the controlling, question here is, Was the agreement evidenced by Exhibit A a sale or an option? On this question counsel cite, and quote voluminously from, many cases in this and other jurisdictions. A review and analysis here of all these authorities would be futile. They amount only to this, the character of such a contract is determined by the intent of the parties. *Asia Inv. Co. v. Levin,* 118 Wash. 620, 204 Pac. 808. If the contract clearly expresses that intent it must be construed as written and cannot be varied by parol. If not, parol evidence may be admitted

and if, meanwhile, the parties themselves have, by their conduct, construed the writing, that construction is the best possible guide in ascertaining their meaning at the time of the execution of the document.

■ Exhibit A reads:

"Colorado Springs, Colo. Aug. 13, 1928

"This agreement made and entered into this day between Channing F. Sweet, seller, and Thompson and Schaefer, Buyers

"Seller agrees to deliver between Oct. 15, 1928 and Oct. 28, 1928, optional with buyers, approximately 1600 head dehorned Hereford yearling steers branded (see below) now ranging on the Woods Ranch, North of Ramah, Elbert Co., Colo., F. O. B. cars at Agate, Colo., for 12c per pound, freight paid to Kansas City, Mo., over the U. P. R. R. The cattle to be weighed at the above ranch and either stood in a dry lot over night and weighed the next morning, or driven onto the scales from the pasture and a 3% shrink allowed. This to be optional with the buyers.

"A cut of 200 head is to be allowed at $1.00 per hundred less money or 11c per pound freight paid.

"All unmerchantable cattle are to be cut out before the above cut is taken.

"The receipt of $5,000 as part payment on above cattle is hereby acknowledged and shall be deducted from the final payment.

"Channing F. Sweet, Seller.
"Thompson & Schaefer, Buyers
By Arthur Schaefer

"Brands on above cattle: 6 head-y r hip; 159 head-I left hip; 1 F left; 1445 7 r thigh."

In view of the fact that the record discloses that all those who dealt with these cattle, or were parties to these contracts, were experienced stockmen, it is difficult to conceive of Exhibit A as an option. The parties described themselves as "seller" and "buyer." They provided for no mere nominal payment to bind their bar-

gain, but for the substantial sum of $5,000; not to be credited on the purchase price, but "as part payment"; not as a forfeit, or liquidated damages, but to "be deducted from final payment." Sweet did not agree to *sell* and deliver between October 15 and October 28, but to "deliver" between those dates. It is clear that these parties knew all about options, and forfeitures, and liquidated damages for failure to deliver or accept. They contracted for two options, and two only. Both of these were options to the partnership and both were unequivocally expressed in writing. The first was as to the particular date, between October 15 and October 28, when the cattle should be delivered and accepted; the second was as to the method of shrinkage, or allowance in lieu thereof; and in each of these the contract expressly provided that the option was "with the buyers." For the reasons given we think this contract differs widely from that construed in *Morath v. Perkins,* 86 Colo. 101, 278 Pac. 611, on which the partnership relied; and that *Cullen v. Park Club Land Co.,* 67 Colo. 210, 184 Pac. 303, is ample authority for holding it a contract of sale.

Let us assume, however, that Exhibit A is open to interpretation, as the partership sought to have the court instruct the jury and see what guide thereto, if any, is found in the construction put upon it by the partnership itself. It is conclusively shown by the record that after the execution of Exhibit A, there was such a drop in the market as destroyed all hope of profit on the part of the partnership. If this were an option, the logical action on the part of the partnership would be to promptly release. It did not. If it were a contract of sale, the logical action on the part of the partnership would be to promptly endeavor to unload. It did. Through one Mourning, who had acted as agent in selling to it, the partnership, on August 29, resold to Wood by Exhibit B, and by the terms thereof obtained, and retained, a cash payment of $6,000, contracted for delivery at the time it was to receive under Exhibit A, and thereafter arranged

with Sweet to deliver to Wood, instead of to itself, and take Wood's check. Mourning, only, representing the partnership, was present at Agate on October 28, the delivery date agreed upon. Wood was there but refused to receive and pay. Thereupon Mourning 'phoned Schaefer, who was at Santa Fe, New Mexico, not that Wood had refused to accept and hence they would exercise their option and refuse, but that Wood had refused to accept and "there was no money to pay for the cattle." Then for the first time Schaefer attempted to exercise an option; then for the first time Mourning and Sweet heard of an option. It is argued that this resale to Wood was no evidence of the partnership's construction because one often sells what he holds only by option. True, but men do not buy and sell $125,000 worth of cattle and drive them about the country for the mere fun of doing business, and the undisputed evidence is that there was no profit in the sale to Wood. We think Exhibit A is thus shown, beyond question, to be a contract of sale and purchase, not an option.

 2. The partnership offered to prove, by the witness Schaefer "That at the time of the execution of the contract, Exhibit A, it was agreed and understood between the plaintiff and the defendants, through Schaefer, that the defendants were not to be bound under the contract to accept and receive these cattle, or to buy the same, unless they elected so to do; and further, that that understanding and agreement was that Sweet could keep the $5,000 as forfeiture, and the defendants relieved from any liability under the contract." If so, this was a material oral modification of a written contract, either preceding, or coincident with, its execution and delivery. All such modifications are presumed in law to be merged into the writing. Such modification was contrary to the interpretation thereafter put upon the contract by the conduct of the partnership. If this was a new contract it was without consideration. For these reasons the offer was properly rejected by the court. 6 R. C. L. p.

914, §299, and p. 916, §301; Wigmore on Ev. (2d Ed.) Vol. 5, p. 318, §2435; *Hubbard v. Mulligan,* 13 Colo. App. 116, 57 Pac. 738; *Eubanks v. Gonder,* 90 Colo. 44, 6 P. (2d) 3.

■ 3. For the reasons heretofore given Exhibit B, which disclosed the construction put by the partnership upon Exhibit A before any controversy arose thereunder, was properly admitted.

4. The court gave 15 instructions and refused 26 requested by the partnership. Error is assigned to the giving of six and the refusal of 25. The argument, however, is confined to instruction No. 9 given, and, in a brief and very general way, to all those refused, without separately or particularly distinguishing them. What we herein say on the other questions raised, disposes of every material point made under this heading.

■ 5. It is earnestly contended that the cattle resold by Sweet, after the refusal of the partnership and Wood to accept, were not shown to be the cattle covered by Exhibit A. Much evidence on this question was presented, but we do not think the point well taken. These cattle were in Sweet's pasture when sold. They had been there seen and inspected by Schaefer two or three times. It was a large pasture, he did not see all of them, and one inspection was merely made from the highway. But Schaefer ran cattle in the adjoining pasture and there is no indication that the partnership was deceived. One state inspector went over the herd on the ranch on the day it was taken out and again a mile outside of Agate, and another, officially, at Agate. The cattle were reinspected at the points of delivery. These inspectors testified, as did Sweet's foreman, who was fully advised. The cattle had been bought by Sweet in Texas and put in the inclosure. They had been mingled with no others, save 400 of a different age, which had been separately sold to Mourning and taken from the pasture. The objection was not made on the date of delivery. The most that can be said for the contention is that it rests upon conflicting

evidence of which we are not the judges. Discrepancies, which there were, were trivial, and fully taken care of by the remission of the $764.21 from the verdict.

██ ██ 6. The complaint stated a cause of action against the partnership and each partner, and prayed a joint and several judgment. The evidence supported such a judgment and both partners were served. Judgment was first entered against the partnership and after the term had expired and the bill of exceptions was settled and approved, the error was discovered and on Sweet's motion a nunc pro tunc order was entered making the necessary amendment. This was the mere correction of a clerical error and since it might have been made without violating the provisions of section 81 of the Code, p. 116, C. L. 1921, and since the application to amend is not abstracted, the presumption is in favor of the judgment as it stands. *Wilson v. Carroll,* 80 Colo. 234, 236, 250 Pac. 555; *McWilliams v. Patton,* 70 Colo. 475, 202 Pac. 710.

That judgment is accordingly affirmed.

Mr. Chief Justice Adams and Mr. Justice Butler concur.