No. 14,800.

GRIFFITH, DOING BUSINESS AS GRIFFITH MOTORS *v.* ANDERSON.
(124 P. [2d] 599)

Decided March 30, 1942.

Mr. GEORGE R. BAER, Mr. J. H. BOUTCHER, for plaintiff in error.

Mr. JAMES R. HOFFMAN, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

ANDERSON, defendant in error, plaintiff below, to whom we hereinafter refer by name, brought this action against plaintiff in error, herein mentioned as Griffith, for actual and exemplary damages for alleged breach of contract on the part of Griffith occasioned by his failure to furnish, as allegedly agreed, public liability and property damage insurance in connection with the sale by him of an automobile to Anderson. The matter was first tried in a justice of the peace court where judgment was for Griffith, but on appeal to the county court, on a trial to a jury, Anderson had judgment in the sum of $29 actual damages and $150 exemplary damages. Griffith seeks reversal on a writ of error.

The facts are relatively simple, and there is nothing in the abstract of record or briefs to indicate that there was, or is, any serious dispute concerning them. Anderson admits buying the car and that the usual method of procedure was followed, that is, he paid $100 down, financed $145, and in addition, paid $18 finance charges and $29 for fire, theft and collision insurance, the last three items amounting in all to $192 which was the amount of the note he signed. Anderson's statement is in part as follows: "I said, Mr. Griffith, I can give you $100 down and I understand the $145.00 will cost me $18.00 but I get a refund if I pay it off before the note expires. He said yes, you get a refund on the loan but not on the insurance. I said, well, I know I have got to have at least $5,000 public liability insurance. He said public liability and property damage insurance. I said I thought they were the same. No, he said, it is public liability and property damage. He said, you will have to have comprehensive fire and theft insurance, 50 dollars deductible, and the finance company where I dispose of the paper will demand it. I said I assumed that, but I only want enough to cover their loan but if my

boy should hurt or kill somebody—I work for wages— and I never would in this world be able to pay off a judgment. I said now 29 dollars—He said it would cost me $29.00. He said the price on it is $29.00. I said, now that is about $6.00 less than I could get insurance from the Triple A. He said I work in an eastern company. I said the boy is only 16 years old but he has a driver's license. Can he get that public liability insurance? Mr. Griffith said, yes he can; he is of lawful age. I called the boy over and said, do you want this car? and he said, yes, Dad; it is a honey. I said then, Mr. Griffith, I will take the car and pay you $100.00 and finance the $145. I said, what will it all be? He said, finance and insurance will come to $47.00, a balance of 145, or $192.00 for the note."

Anderson's son testified: "My father wanted to know if he could get public liability insurance; that I was only 16 but I had a driver's license and Mr. Griffith said yes, that I was of lawful age."

It will be noted, according to Anderson's testimony, that Griffith made no committment concerning the public liability insurance. When he said it would cost Anderson $29 he was talking about fire, theft and collision insurance—the only kind of insurance insisted upon by the finance company. The most that can be said for Anderson's testimony is that it indicates Griffith admitted the Andersons could get public liability insurance because the boy was old enough to get a driver's license.

It is admitted that this conversation took place prior to, or contemporaneously with, the written agreement signed by Anderson. The language therein is plain and unambiguous and sets out the fire, theft and collision insurance that Griffith was talking about (Assuming the truth of Anderson's testimony, which Griffith disputes). Anderson accepted the contract, although he says he did not read it, but after the finance company had accepted the paper, he was sent a statement asking him to check various items and o.k. the agreement, which he did.

When he called at the office of the finance company to make his first payment, he inquired whether he had public liability insurance and was informed he did not. He telephoned Griffith and remonstrated with him about it, but Griffith told him, "You can't get anything back on the insurance, but you get a refund on the finance." Anderson apparently abided by this suggestion because in August he paid the note in full. Neither Anderson nor his son was ever involved in any accident or ever suffered any loss by fire, theft or collision which might have been the foundation for a claim of any kind against an insurer.

■■■ Ordinarily, deficiencies of counsel apparent herein would call for an affirmance of the judgment, but in this case it would result in such palpable injustice that we are bound to disregard the admitted failure of counsel and reverse the judgment. We do this for at least three reasons: 1. Because of the insufficiency of the evidence to sustain the verdict. R.C.P. Colo., Rule 59 (6). The so-called contract was a figment of Anderson's imagination. No loss was shown. Whatever damage he suffered was "damnum absque injuria." 2. Counsel for Anderson' rely exclusively on defaults in the niceties of the practice of opposing counsel, which ordinarily is perfectly proper, and is so here, excepting that "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." R.C.P. Colo., Rule 61. We think this is a proper case to invoke the rule. 3. As already stated the conversation concerning the insurance took place before, or contemporaneously with, the execution of the written agreement. "If so, this was a material oral modification of a written contract, either preceding, or coincident with, its execution and delivery. All such modifications are presumed in law to be merged into the writing." *Thompson v. Sweet*, 91 Colo. 552, 557, 17 P. (2d) 308. We think this language applicable, too.

Judgment reversed.

Mr. Chief Justice Young and Mr. Justice Hilliard concur.

Mr. Justice Bock dissents.