## No. 23217.

ARTHUR W. NAHRING AND MARGARET B. NAHRING *v.* CITY
AND COUNTY OF DENVER, A MUNICIPAL CORPORATION OF THE
STATE OF COLORADO, ACTING BY AND THROUGH ITS BOARD
OF WATER COMMISSIONERS.

(484 P.2d 1235)

Decided May 17, 1971.

Richard H. Duke, for plaintiffs in error.

Saunders, Dickson, Snyder & Ross, P.C., Jack F. Ross, George L. Zoellner, Kenneth Broadhurst, for defendants in error.

*In Department.*

Opinion by Mr. Justice Day.

Plaintiffs in error were plaintiffs below and will be referred to as such. They are the owners of 52 acres, 39 acres of which is irrigated, of land in Jefferson County, and presently own what has been historically described or denominated as a right to 15 "inches" of water from Harriman Lake, a water storage reservoir in Jefferson County. Both parties agree this had no relationship to the statutory inch (C.R.S. 1963, 152-1-28). The defendant below, hereinafter referred to as the Water Board, was the City and County of Denver's Board of Water Commissioners. This reservoir is a "carrier" facility — meaning that Denver through the Water Board owns the lake and the water rights adjudicated thereto but that the use of the water stored therein was sold to various users, such as the plaintiffs, who pay an annual charge, based upon the number of inches to which the user has a right. Historically, a maximum of 445 "inches" had

been sold, of which written contracts are known for 215 inches. Denver is not itself a consumer of Harriman Lake water.

Prior to 1964, the Water Board released water from the facility upon the call of any user until the lake was dry, without regard to the volume taken from the lake by any specific user. Then, in 1964, Water Board in a unilateral interpretation of the contract decided to limit each user to 1.427 acre feet per "inch right." This "order" resulted in limiting the plaintiffs to a total of approximately 22 acre feet. Claiming a deprivation of their contract rights, plaintiffs claimed damages for injury to their crops occasioned by the reduction of the amount of water that they had previously received. They also asked the court to enjoin the Water Board from reducing delivery of water in an amount less than that received historically over the years until the 1964 limitation of which complaint is made.

The lower court held, *inter alia,* that inasmuch as the term "inch" is ambiguous and indefinite, when used in connection with a facility such as Harriman Lake, the defendant had the right and duty to change the system of measurement by regulation. The court further held that inasmuch as the regulation and system of limitations was a reasonable one, the court had no jurisdiction to substitute its judgment for that of the Water Board which — as claimed by the Water Board — is vested with the sole and exclusive authority to hear and determine the reasonableness of its regulations for the sale of its water. We determine the court was in error for reasons assigned in the following discussion.

Plaintiff Arthur Nahring and his wife have owned and farmed the land to which the water in question is applied since 1931, but Mr. Nahring's father had leased the land since 1898. Plaintiffs are consumers, and not appropriators from the Harriman Lake facility, and as such their rights are determined by contractual and statutory provisions, rather than by priority date. The

court below correctly found that plaintiffs had for many years contracted for and paid for 15 "inches" of water. The evidence established that, prior to 1964, plaintiffs received for their so-called "15 inches" between 45 and 50 acre feet of water to irrigate their land, and had also received this amount from the Water Board and its predecessor Denver Union Water Co. without protest from any other user for many years. The new formula adopted by the Water Board in 1964 limited the plaintiffs to that portion of the water stored in the facility equivalent to their proportion of outstanding or salable "inches." The Water Board then determined that the total number of inches available was 445, and the share of the plaintiffs thus became 15/445ths of the total volume of 635 acre feet, or about 22 acre feet.

Prior to his ownership, plaintiff Arthur Nahring had been on the property since 1898, when his father, Carl Nahring, first leased it. The right to the water in question arose from a contract first mentioned in a trust deed recorded in 1894. Although the original contract is unavailable, the above deed of trust refers to the property conveyed and "thereon including an annual contract for 20 inches from Harriman Reservoir." (A portion of the land, along with the right to use 5 "inches" of water, was subsequently disposed of.) Copies of contracts similar to the one first entered into for the water in question were received as evidence at the proceeding below.

These contracts also refer only to "inches" of water, without making an attempt to explain what amount of water is or was reflected by an "inch." In attempting to clear up the ambiguity as to what amount of water is represented by these so-called "inches" the Water Board chose to ignore the long-standing practice of the plaintiff to which the Board and other users acquiesced — to receive an average of 45-50 acre feet per year. The method utilized by the Water Board was completely at variance with the practices of the plaintiffs and their

predecessors for over 70 years. While the original contract may have included what today appears to be an ambiguous measurement of the amount of water bought by and used by plaintiffs, the conduct of the parties, for over 70 years assists in clearing the ambiguity.

It is well established law that when a contract or agreement has been given a practical construction, as reflected by the conduct and acts of the parties in its performance, such construction may, and perhaps even should, be considered by the court in eliminating any ambiguity, and in ascertaining the mutual meaning of the parties at the time of the contracting. *See Shearer v. Snyder,* 115 Colo. 232, 171 P.2d 663 (1946); *Hinkle v. Blinn,* 92 Colo. 302, 19 P.2d 1038 (1933); *Thompson v. Sweet,* 91 Colo. 552, 17 P.2d 308 (1932). In *Hinkle v. Blinn, supra,* this court held:

"We conclude that the conduct of the parties before the controversy arose, acting under the contract, is a reliable test of their interpretation of the instrument, and whatever the stress of subsequent disagreement, neither in his own interest may be heard to urge a different construction." *Id.*

And in *Thompson v. Sweet, supra:*

"If the contract clearly expresses that intent it must be construed as written and cannot be varied by parol. If not, parol evidence may be admitted and if, meanwhile, the parties themselves have, by their conduct, construed the writing, that construction is the best possible guide in ascertaining their meaning at the time of the execution of the document." *Id.*

Particularly appropriate is language from the case of *Greeley Co. v. McCloughan,* 140 Colo. 173, 342 P.2d 1045 (1959) in which certain property owners alleged an entitlement to forty additional inches of water from a ditch. Although premising its denial of the claim on the doctrine of laches, this court, speaking through Mr. Justice Hall, stated as follows:

"Defendant urges that the language of the Agreement

is indefinite and ambiguous requiring interpretation by the courts. Assuming this to be true, it is immaterial to the issues framed here because the parties themselves for at least forty-five years have by their conduct interpreted this document. *Colorado has long recognized the rule that in construing a contract the courts will follow the construction placed upon it by the parties themselves." Id. Citing New Brantner Ditch Co. v. Kramer,* 57 Colo. 218, 141 P. 498 (1914); *Buckhorn Plaster Co. v. Consolidated Plaster Co.,* 47 Colo. 516, 108 P. 27 (1910). (Emphasis added.)

■■■ Applying the above settled law to the facts, we note that the record reveals that the Water Board and its predecessor, the Denver Union Water Company, have operated the sale and flow of Harriman Lake water since 1897, and have had an interest in the Harriman Ditch which feeds the reservoir and incorporates plaintiff's ditch rights since 1894. Thus, the predecessors to both parties to this action were parties to the original contract, drawn over 70 years ago. The best indicia of the intention of the parties with respect to the original assignment of water rights is their conduct over the past 70 plus years. The taking of a sufficient amount by the plaintiffs to irrigate 39 acres had never been disputed by the Water Board nor were there objections by any other user, even though the supply was often exhausted before the end of the growing season.

The judgment of the lower court is reversed and the cause remanded with directions to enter judgment for damages as established by the record or in the alternative to try the issue of damages alone, and to grant the injunction sought by plaintiffs to restrain the Water Board from delivering less water from Harriman Lake than required to irrigate without waste the 39 productive acres to which the water purchased was applied.

MR. JUSTICE KELLEY, MR. JUSTICE LEE and MR. JUSTICE ERICKSON concur.