**FRONTIER EXPLORATION, INC., a Colorado corporation, Plaintiff-Appellant,**

v.

**BLOCKER EXPLORATION COMPANY, a Texas corporation, Defendant-Appellee.**

No. 84CA0408.

Colorado Court of Appeals, Div. I.

June 6, 1985.

Rehearings Denied July 11, 1985.

Certiorari Granted Nov. 18, 1985.

Davis, Graham & Stubbs, Christopher L. Richardson, Glenn W. Merrick, Glen E. Keller, Jr., Denver, for plaintiff-appellant.

Holt & Gebow, P.C., Thomas E. Gebow, Elsa D. Burchinow, L. Tyrone Holt, Denver, for defendant-appellee.

PIERCE, Judge.

Plaintiff, Frontier Exploration, Inc., (Frontier) appeals from a summary judgment granted in favor of defendant, Blocker Exploration Company (Blocker). We affirm.

This dispute originates from several agreements concerning the exploration and development of certain oil and gas leases located in Michigan. In January 1981, Lewis Energy Corporation (Lewis) was assigned several leases by Great Lakes Niagaran (GLN) in return for a reversionary 15% working interest.

In February 1981, Lewis retained Frontier to conduct seismic work on the Michigan leases. Also in February 1981, Lewis assigned a portion of its interest to Roxy Resources, Inc.

In March 1981, Lewis assigned another portion of its interest to Blocker. Blocker acquired a 25% working interest in the leases. The Lewis-Blocker agreement specifically states that: "Lewis will conduct a reconnaissance seismic program in the area of mutual interest, the extent and nature of such program to be determined by Lewis." After completion of the reconnaissance seismic program, the agreement provides that: "Lewis will, after consultation with [Blocker] undertake a detailed seismic investigation ...." Thereafter, Lewis is to undertake and manage a drilling program as contemplated by the Lewis-GLN agreement.

Blocker agreed to contribute certain sums to overhead, as well as "one third of [Lewis'] out-of-pocket costs incurred, up to $750,000 for the reconnaissance seismic program. Thereafter, [Blocker] will con-

tribute one fourth of such costs." In addition, Blocker was to contribute 25% of the costs incurred for the detailed seismic survey, "if [Blocker] elect[s] to participate in such a program." The agreement also provides for mutual sharing of data and interpretation.

In addition, the agreement specifies that the rights of the parties, except as otherwise expressly provided in the agreement, are to be governed by the Lewis-GLN contract. Under the Lewis-GLN agreement, Lewis is designated as the "operator" for the exploration and development of the leases covered by that agreement. The agreement further provides that Lewis and GLN shall enter into a separate operating agreement prior to commencing any drilling operations.

Frontier performed reconnaissance seismic work from March through September 1981. It claims to have been paid for only a portion of the costs of such work. In February 1982 Lewis filed for bankruptcy. Having been unable to collect for its services from Lewis, Frontier filed suit against Blocker, claiming the existence of a mining partnership between Lewis and Blocker which made Blocker liable to Frontier for payment for its seismic work at least to the extent it obligated itself in the Lewis-Blocker agreement.

Both Frontier and Blocker filed motions for summary judgment, Frontier alleging that by operation of law a mining partnership exists, and Blocker alleging to the contrary.

■ Although the existence of an oil and gas or mining partnership depends on the underlying facts, where the facts, as here, are undisputed, it becomes a question of law. C.R.C.P. 56. *Youngstown Sheet and Tube Co. v. Penn,* 355 S.W.2d 239 (Tex.Civ. App.1962), *modified,* 363 S.W.2d 230 (Tex. 1963). In resolving that issue, the trial court found no joint operations and, thus, found no mining partnership.

## Mining Partnership

When mining partnerships were first recognized, they were defined rather broadly:

"[W]here several owners unite and co-operate in working the mine, then a new relation exists between them ... [t]hey form what is termed a mining partnership." *Kahn v. Smelting Co.,* 102 U.S. (12 Otto) 641, 26 L.Ed. 266 (1880); *Charles v. Eshelman,* 5 Colo. 107 (1879); *see Manville v. Parks,* 7 Colo. 128, 2 P. 212 (1883). In accordance with this definition, a few early Colorado mining cases implied that a contribution of funds for the carrying on of mining operations alone was sufficient to form a mining partnership. *Lyman v. Schwartz,* 13 Colo.App. 318, 57 P. 735 (1899); *Perkins v. Peterson,* 2 Colo.App. 242, 29 P. 1135 (1892).

■ Over the years, the basic principle has continuously been applied, but a more specific definition has developed, recognizing three essential elements as prerequisites of a mining partnership: (1) joint ownership; (2) joint operations; and (3) an express or implied agreement to share profits and losses. Fiske, *Mining Partnership,* 26 Inst. Oil & Gas L. & Tax. 187 (1975); Erisman & Dalton, *Multi-Party Ownership of Minerals—Real Property Consequences of Joint Mineral Development,* 25 Rocky Mtn.Min.L.Inst. 7–38 (1979); 2 H. Williams & C. Meyers, *Oil & Gas Law* § 435 (1984); 4 W. Summers, *Law of Oil & Gas,* §§ 721–724 (1962); *Edwards v. Hardwick,* 350 P.2d 495 (Okla.1960); *Templeton v. Wolverton,* 142 Tex. 422, 179 S.W.2d 252 (1944); *U.S. Truck Lines v. Texaco, Inc.,* 337 S.W.2d 497 (Tex.Civ.App.1960); *see Ayco Development Corp. v. G.E.T. Service Co.,* 616 S.W.2d 184 (Tex.1981); *Hamilton v. Texas Oil & Gas Corp.,* 648 S.W.2d 316 (Tex.App.1982). All these elements must be present. *Gilroy v. White Eagle Oil Co.,* 201 F.2d 113 (10th Cir.1952). The parties here have conceded only the existence of joint ownership.

## Joint Operations

■ The principal issue here, as well as the critical element of a mining partnership, is joint operation of an oil and gas venture. Several cases in various jurisdic-

tions have found joint operations where the parties only shared expenses, had a community of interest, and participated minimally or not at all in management of the project. *E.g., Gilbert v. Fontaine,* 22 F.2d 657 (8th Cir.1927); *Vicioso v. Watson,* 325 F.Supp. 1071 (C.D.Cal.1971). However, we do not find these cases to be persuasive.

This line of cases recognizes that where there is only common ownership, the relation is generally a tenancy-in-common and not a mining partnership. *E.g., see Gilbert v. Fontaine, supra.* However, a tenant-in-common has the right to enter, explore, and produce oil and gas from its leasehold estate. *Torgeson v. Connelly,* 348 P.2d 63 (Wyo.1959); 1 W. Summers, *Law of Oil & Gas* § 38 (1962); *see* § 34–44–101 et seq., C.R.S. (1984 Repl.Vol. 14). Yet, a tenant-in-common is not considered a mining partner without more. *See Manville v. Parks, supra.* Thus, having only a right of involvement is not determinative of the existence of a mining partnership. Rather, the determining factor is related to the degree of active participation in control or management of the venture that is exercised by a co-tenant or co-owner.

Joint operations by definition imply the performance of work or labor, or the exertion of power or influence to act and produce an effect. *See Edwards v. Hardwick, supra.* This definition again emphasizes that it is active participation in the control or management of an oil and gas operation which is required to fulfill the joint operation prerequisite. Each of the joint owners must have some choice and participation in control and management. *Bovaird Supply Co. v. McClement,* 32 Ill.App.2d 224, 177 N.E.2d 430 (1961); Fiske, *Mining Partnership,* 26 Inst. Oil & Gas L. & Tax., 202–211 (1975). Accordingly, all investors do not automatically become mining partners by virtue of holding working interests in an oil and gas lease. *Dunbar v. Olson,* 349 Ill. App. 308, 110 N.E.2d 664 (1953); *Appleby v. Buck,* 351 S.W.2d 494 (Ky.1961). Similarly, a person who contributes only equipment to an oil and gas venture is also not held to be a mining partner. *Edwards v. Hardwick, supra.*

It therefore follows that working-interest owners who are "non-operators" are not mining partners even though in addition to their ownership interest, they have some limited participation such as the right to give counsel, *Templeton v. Wolverton, supra,* or the obligation to approve certain expenditures, or the right to take in kind, or the right of access to the site. *Ayco Development Corp., supra; Youngstown Sheet & Tube Co., supra; Berchelmann v. Western Co.,* 363 S.W.2d 875 (Tex.Civ.App. 1962). If construed literally such rights might be considered as indicating "joint operation," but we do not so construe this package of rights to be sufficient to establish a joint operation as a matter of law.

Such commonly accepted rights of non-operators as the right to receive reports and statements, to take in kind, to advance limited funds or services or equipment, or to have access to the site, to inspect books, or the right to withhold approval of specified expenditures, do not, by themselves, rise to the level of such active participation or control of the operation so as to constitute "joint operations." The critical issue is whether these rights, or any combination of them, are exercised by any two or more parties to such a degree that they have practical control or management over a venture, thereby indicating a mining partnership.

It is difficult for a non-operating working-interest owner who is otherwise also engaged in the oil and gas business and, thus is in a position to prescribe direction or to participate in operating decisions, to be sufficiently disengaged from a venture to avoid the appearance of being a mining partner. Even an industry-member's involvement, however, must be looked at objectively.

Again, co-ownership alone does not give rise to a mining partnership. *Williston Oil & Gas Co. v. Phoenix Insurance Co.,* 271 F.2d 745 (10th Cir.1959). As an example, a member of the oil and gas or mining industry who has a non-operating working-interest should not be considered, without more,

a mining partner if his only rights are to take in kind, receive reports, inspect books, make an election of whether to join in a particular phase of exploration/development (commonly known as a "go-no-go" decision), or has the right of approval of specified expenditures. *See Luling Oil & Gas Co. v. Humble Oil & Refining Co.,* 144 Tex. 475, 191 S.W.2d 716 (1945); *Hamilton v. Texas Oil & Gas Co., supra; U.S. Truck Lines, supra.*

The above guidelines are consistent with the general principle of a mining partnership that partners—operators—have a limited power to bind other members of the partnership. *See Smaller v. Leach,* 136 Colo. 297, 316 P.2d 1030 (1957) (citing *Charles v. Eschelman, supra*); 4 W. Summers, *Law of Oil & Gas* § 721.1 (1962). To hold otherwise and thereby charge parties willing to risk their monies with the unlimited liability of a general partner, would not be in keeping with general policies of promoting investment and development. *See* Fiske, *Mining Partnership,* 26 Inst. Oil & Gas L. & Tax. 187 and 192 (1975). Involvement, without active participation, control, or management of an oil and gas or mining venture, should not give rise to a mining partnership.

█ Applying the above principles and guidelines to the facts presented to the trial court, we find that Blocker did not actively participate in the control or management of the exploration activities on the Michigan leases. Thus, absent the joint operation prerequisite, no mining partnership existed between Blocker and Lewis, and Blocker is therefore not liable to Frontier.

Having failed to seek review, Blocker's arguments will not be here addressed.

The summary judgment granted in favor of Blocker is affirmed.

SMITH, J., concurs.

BABCOCK, J., dissents.

BABCOCK, Judge, dissenting.

I respectfully dissent.

The majority concludes that the controlling factor in determining whether a mining partnership exists is the degree of active exercise of an existent contractual right of participation in control or management of the venture. In my view, the existence of the right is sufficient as a matter of law. *See Ayco Development Corp. v. G.E.T. Service Co.,* 616 S.W.2d 184 (Tex.1981); *see also Shell Oil Co. v. Prestridge,* 249 F.2d 413 (9th Cir.1957). The active exercise of that right may be probative of the parties' intent to form a mining partnership, but it is not a prerequisite therefor as a matter of law.

The majority justifies its rule by reasoning that it is difficult for a nonoperating working interest owner who is otherwise also engaged in the oil and gas business and thus is in a position to prescribe the direction of, or to participate in, operating decisions to be sufficiently disengaged from a venture to avoid the appearance of being a minor partner. I believe this reasoning misses the mark. The parties to mining ventures are free to limit their liability by the express terms thereof. One who contracts voluntarily for the right of involvement or participation in the control or management of a mining venture should be liable for the debts of the partnership, whether that right is exercised in fact or not.

Here, the agreement provided in part that: (1) Lewis was to conduct a reconnaissance seismic program, the extent and nature of which was to be established by Lewis and Roxy; (2) all interpretations of the seismic data made by any of the parties to the agreement (Lewis, Blocker, or Roxy) was made available to the other parties; (3) upon completion of the reconnaissance seismic program and after consultation with Blocker and Roxy, Lewis would then undertake a detailed seismic investigation to establish drilling prospects; (4) Lewis was, to the extent indicated by the data interpretations *and after consultation with Blocker and Roxy,* to undertake and manage a drilling program under the Lewis-GLN agreement; (5) in addition to their initial payments for the acquisition in the interests in the Michigan leases, Blocker and Roxy agreed to contribute varying

amounts to the reconnaissance, seismic, and detailed seismic program; (6) Blocker and Roxy agreed to pay Lewis for its overhead costs, $2,500 and $5,000 per month respectively; and (7) Roxy and Blocker had full access to regulatory reports, daily drillings, logs, core samples, and to the derek floor.

I would hold the agreement to be ambiguous regarding the issue of right of involvement or participation in the control or management of this venture. *See Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984). Thus, extrinsic evidence is admissible and must be considered by the trial court in order to determine the mutual intent of the parties to the agreement. *Union Rural Electric Ass'n v. Public Utilities Commission*, 661 P.2d 247 (Colo.1983). This extrinsic evidence may include any pertinent circumstances attendant to the transaction, including the conduct of the parties under the agreement. *Nahring v. Denver*, 174 Colo. 548, 484 P.2d 1235 (1971). Therefore, there are genuine issues of material fact which exist as to the element of "joint operations" and summary judgment was improper.